IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

Jenny Denton,

Plaintiff,

vs.

Orion Rugs, Inc., McThree Industries, and Bajong Carpets, NV,

Defendants.

Civil Action No.8:06-576-HFF-BHH

**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

This matter is before the Court on the defendants McThree Industries' and Bajong Carpets, NV's (hereinafter the "defendants") respective motions to set aside entries of default made October 26, 2006. In all material respects, these motions are identical. The plaintiff has pled claims for sex discrimination, in violation of 42 U.S.C. § 2000e *et seq*. ("Title VII"), and for retaliation, in violation of the Equal Pay Act, 29 U.S.C. § 206(d).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff filed this lawsuit on February 24, 2006, alleging claims for sexual discrimination and retaliation in the termination of her employment from the defendant Orian Rugs, Inc. The plaintiff amended her Complaint on August 24, 2006, to add defendants McThree Industries and Bajong Carpets, NV. The plaintiff served the defendants by way of the South Carolina Secretary of State, on September 25, 2006. The response to the Amended Complaint was due October 15, 2006. The defendants have never responded. The plaintiff moved for an entry of default on October 25, 2006. Default was entered on

October 26, 2006. The defendants filed separate motions to set aside the entry, February 9, 2007, pursuant to Federal Rules of Civil Procedure 55 and/or 60.

**DISCUSSION**

Federal Rule of Civil Procedure 55(c) provides "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) provides six grounds for relief from judgment, including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). "As there has been no judgment entered in the present case, Rule 55 governs this court's decision." *See Colleton Preparatory Academy, Inc. v. Beazer East, Inc.*, 223 F.R.D. 401, 405 (D.S.C. 2004).

It is now settled that "although the clear policy of the [Federal] Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir.1982) (citations omitted). Furthermore, the decision to set aside an entry of default is "committed to the sound discretion of the trial court" and should only be disturbed upon a finding of an abuse of discretion. *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir.1987); *see also Williams v. Blitz*, 226 F.2d 463 (4th Cir.1955); *Papagianakis v. The Samos*, 186 F.2d 257, 263 (4th Cir.1950). Generally speaking, "a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir.1967).

Judge David C. Norton's decision, in *Colleton Preparatory Academy, Inc. v. Beazer East, Inc.*, 223 F.R.D. 401 (D.S.C. 2004), aptly distilled Fourth Circuit treatment concerning Rule 55 and summarized the factors to be considered as follows: (1) the promptness of the defaulting party; (2) the existence of a meritorious defense; (3) the personal responsibility of the defaulting party as opposed to the party's attorney; (4) the prejudice to the party not

in default; (5) whether the defaulting party has a history of dilatory conduct; and (6) the availability of sanctions less drastic. *Colleton Prep*, 223 F.R.D. at 405-06. Of these factors, courts have placed the greatest significance on the personal responsibility for the default of the defaulting party as opposed to the party's attorney. *See Moradi*, 673 F.2d at 728; *Colleton Prep*, 223 F.R.D. at 407. Judge Michael Duffy's recent decision, in *Lewitzke v. West Motor Freight*, 2006 WL 2345986, at *2-5 (D.S.C. August 11, 2006) (Pl. Ex. C), reiterated this approach.

The Court is persuaded substantially by three of the *Colleton Prep* factors that the entry of default should not be set aside – (1) the lack of promptness of the defaulting parties in seeking to set aside the entry of default; (2) those same parties apparent culpability for the default; and (3) the prejudice caused to the plaintiff. The Court will address each of the six factors in turn.

A brief recitation of the material facts is useful. The plaintiff, in her response to the motions to set aside the entry of default, provided the following and compelling outline of relevant facts. These facts are undisputed by the moving parties.

| | |
|---|---|
| August 28, 2006 | Pursuant to a prior conversation with defense counsel (see Murphy Aff. ¶ 2), the plaintiff's attorney served opposing counsel with Amended Complaint and Summonses to McThree and Bajong. (Murphy Aff. ¶ 3.) |
| Early-Mid Sept. 2006 | Counsel for the defendants informs the plaintiff's counsel that, despite earlier statements, he was informed by McThree and Bajong that they were not authorizing him to accept service and that the plaintiff would have to serve them. (Murphy Aff. ¶ 4.) |
| September 22, 2006 | Counsel for the plaintiff mails Summonses and Amended Complaints to the South Carolina Secretary of State. (Murphy Aff ¶ 6.) |
| September 25, 2006 | Secretary of State accepts service of process for Bajong and McThree. [See Doc. 27, Appendices 1 and 2.] |

| | |
|---|---|
| October 9, 2006 | Stefaan Duchi, President of Defendant Orian Rugs and managing director of Defendants McThree and Bajong, received the Summonses and Complaints for Bajong and McThree from the Secretary of State. He affirms that, at this point, "I understood from the communication that [Bajong and McThree] had been sued in the United States District Court . . . ." (Def.s' Exs. Duchi Affs. ¶ 3.) |
| Early October | Duchi states that he became aware that defendants must respond to lawsuits in District Court within "Twenty (20) days from the date of service." (Duchi Affs. ¶¶ 5-6.) |
| October 15, 2006 | Deadline for responsive pleadings for Bajong and McThree based on acceptance of service by Secretary of State. |
| October 24, 2006 | Court extends discovery deadline in case through February 22, 2007. [Doc. 24 ¶ 4.] |
| October 25, 2006 | After the defendants Bajong and McThree fail to respond, the plaintiff moves for entry of default. [Doc. 25-28.] |
| October 26, 2006 | Default entered by clerk. [Doc. 29.] |
| October 29, 2006 | According to Duchi's Affidavits (see ¶¶ 3, 5), this is the date on which he (mistakenly) believed Bajong and McThree were required to respond to the Amended Complaint. |
| December 5, 2006 | Fifty-seven days after actually receiving process from the Secretary of State and nearly two months after learning that they had twenty days to respond to process, Bajong and McThree finally retain counsel (but still do not respond). (Duchi Affs. ¶ 7.) |
| January 24, 2006 | Second Amended Scheduling Order. [Doc. 33.] |
| January 26, 2007 | Duchi signs affidavits in support of Defendants Bajong and McThree efforts to be relieved from entry of default. |
| February 9, 2007 | 117 days after the deadline for responding and 106 days after entry of default, Defendants Bajong and McThree move to vacate the entry of default. [Doc. 34 & 35.] |

| March 15, 2007 | Discovery deadline pursuant to Second Amended Scheduling Order. [Doc. 33 ¶ 1.] |
|---|---|

**I. Delay in Moving to Set Aside the Default**

First, the defendants were inexplicably dilatory in moving to set aside the entries of default. As the above time line reveals, the defendants were required to have answered or otherwise responded to the Amended Complaint by October 15, 2006. The entries of default were made 11 days later on October 26, 2006. Notwithstanding those entries, the defendants' motions to set them aside were not filed until February 9, 2007, **117 days later or nearly three and a half months** after default was entered.

"'Reasonable promptness must be judged in light of the facts and circumstances of each case.'" *Palmetto Fed. Sav. Bank of South Carolina v. Industrial Valley Title Ins. Co.*, 756 F. Supp. 925, 932 (D.S.C. 1991) (quoting *United States v. Moradi*, 673 F.2d 725 (4th Cir. 1982)). The Fourth Circuit has found delays shorter than the one at issue here unreasonable. *See, e.g., Consolidated Masonry & Fireproofing, Inc.*, 383 F.2d 249, 251 (4th Cir. 1967) (finding that "defendant did not act promptly" in moving to set aside default "after more than ***two and one-half months*** had elapsed").

The defendants respond that they are, in fact, prompt with their motions so long as they are made within one year, as prescribed by Fed. R. Civ. P. 60(b). First, this motion is not governed by Rule 60, as previously discussed, and that deadline is inapposite. Second, Rule 60 proscribes an absolute outer limit to such actions – that being not more than one year's time after default judgment was entered – but still demands that, within that time frame, motions be made "within a reasonable time." Fed. R. Civ. P. 60(b). Ultimately, however, to construe any motion to set aside an entry of default as prompt so long as it has been made within a year, would render the core analyses concerning the timeliness of the defendants' motions, as exhibited in cases like *Consolidated Masonry & Fireproofing, Inc.* and *Colleton Prep.,* meaningless and absurd. Accordingly, having filed their motions within

one year of the entry of default does not make the defendants' response prompt, as a matter of law.

In its reply brief, the defendants' proffered a second rationale for their delay, namely the personal circumstances of their attorney, which prohibited him both from properly preparing necessary affidavits and filing a timely motion. Not only does this rationale not explain the delay, itself, but it cannot even effectively shift blame for such delay from the defendants to their attorney, as is its apparent purpose.

The Court is greatly sympathetic to the description of personal and holiday circumstances detailed in the defendants' reply brief, which unquestionably would have burdened his ability to prepare the present motions properly. Notwithstanding, they are no excuse. The defendants could have immediately filed any form of an abridged motion or notice with the Court indicating their urgent intent to contest default, proceed with the case, and supplement their motion to set aside the default at such time as their counsel was in a position to dedicate himself to such matters thoroughly. Instead, the defendants did absolutely nothing at all. They did not apprise the Court of the status of their efforts nor counsel for the plaintiff. As the plaintiff protests, the defendants' actions reflect a cavalier disregard of "an already overburdened judicial process . . . ." *Colleton Prep.*, 223 F.R.D. at 407. Worse it seems to indicate a fundamental misunderstanding about the seriousness of what a lawsuit is and the urgency with which one should respond.

Moreover, the defendants cannot shift blame for the delay in filing a timely motion to their counsel, under the circumstances. The defendants represent that they retained their present counsel on December 5, 2006. (Duchi Affs. ¶ 7.) Accordingly, the defendants themselves had already delayed **nearly a month and a half** by the time they had even retained counsel. Again, it seems peculiar that the defendants would not have responded with more gravity in their efforts to secure counsel and escape the default. Additionally, by December 5, whatever holiday related burdens counsel may have anticipated should have

been apparent to everyone. At any time from then until the filing of the present motions, as counsel's personal circumstances allegedly complicated, the defendants could have sought other counsel to defend their case. Not only was the matter early in litigation, the defendants had not participated in any respect. New counsel would have been of no prejudice.

Additionally, defense counsel's personal circumstances arose, if at all, around the Christmas holiday and escalated into the new year. It is unpersuasive to the Court that counsel should bear the responsibility for a nearly 2 month delay – from October 26 (date of entry of default) through the end of December – all of which preceded such extraordinary circumstances of counsel. If there were mitigating factors arising prior to the end of December attributable to defense counsel, the defendants have not offered them.

To the Court, the delay is unreasonable as a matter of law and lies exclusively at the feet of the party defendants, themselves.

**II. Responsibility for the Default**

As stated, the most important of the *Colleton Prep*. factors is whether or not the default itself is rightly attributable to the defendants as opposed to their attorney. *See Moradi*, 673 F.2d at 728; *Colleton Prep*, 223 F.R.D. at 407. As Judge Duffy succinctly stated in *Lewitzke*:

> This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside. When the party is at fault, the latter interests dominate and the party must adequately defend its conduct in order to show excusable neglect.

*Lewitzke*, 2006 WL 2345986, at *4. In this case, the Court finds that this essential factor weighs heavily against the defendants, by their own admission.

The defendants' excuse for default is that they misunderstood that the time to respond to the Amended Complaint began running from the moment of service upon the South Carolina Secretary of State. Instead, the defendants believed that the 20 days to respond ran from when the companies, themselves, actually received copies of the Amended Complaint. By the defendants' calculation, therefore, the response to the Amended Complaint was due October 29, 2006, 3 days after the entry of default was actually made. The Court finds this misunderstanding to be exclusively the failure of the defendants and no fault of any counsel, as far as the Court has been informed.

The defendants expressly admit as much: "With respect to the third factor . . ., the personal responsibility of the defaulting party, the default in this instance is attributable to the mistake and error of the Belgian defendant[s] in misunderstanding the term 'service' as used in American jurisprudence."[1] (Def. Mem. Supp. Mots. Set Aside Default at 4.) Of course, this conclusion is the only plausible one.

At the time of default, the defendants had no counsel. Counsel was not retained until December 5, 2006. (Duchi Affs. ¶ 7.) Accordingly, there was no attorney who could have been responsible for the default on October 26. The defendants were clearly in communication with Henry S. Knight, esq, their now attorney, when they were served, *id*. at 5, but there is no evidence that the defendants ever asked him for clarification about the deadline of their response or that Knight otherwise affirmatively gave them erroneous

[1] Although the defendants make this admission concerning the *Colleton Prep*. factors, it is clear that they are attempting to admit a mistake for purposes of satisfying the elements of a motion to set aside a default judgment under Fed. R. Civ. P. 60. As stated, this motion is governed by Rule 55 and not Rule 60. *See Colleton Prep.*, 223 F.R.D. at 405. Moreover,

information concerning the same.[2] As stated, the defendants have conceded that it was their own individual misunderstanding.

The Court finds that there is a second reason to hold the defendants personally accountable for the default. The plaintiff has represented, and the defendants do not dispute, that in August of 2006, the defendants had indicated their willingness to accept service through Knight. (Murphy Aff. ¶ 2.) Sometime in September, Knight informed counsel for the plaintiff that the defendants were no longer authorizing him to accept service and that the plaintiff would have to serve them directly. (Murphy Aff. ¶ 4.) As a result, the plaintiff was forced to serve the South Carolina Secretary of State, which in some measure caused the confusion to which the defendants now confess.

The defendants, for strategic reasons or otherwise, were well within their rights to require the plaintiff to serve them directly; the Court does not condemn it. But, their decision necessarily complicated the process by which service was made and led, by their admission, directly to the default. By all accounts, the decision to force direct service was that of the defendants and not their attorney. Again, at this time, the defendants had not even retained any attorney, Knight or anyone else.

For these reasons, the default is exclusively and unquestionably the responsibility of the party defendants and not their attorney.

**III. Prejudice to the Plaintiff**

The Court also finds that the plaintiff has been prejudiced as a result of the default and delayed motions to set it aside. Specifically, the plaintiff has been denied discovery to which she is entitled and has been otherwise forced to expend energy and resources in regards to numerous motions concerning the same. In total, the parties have been given

---

[2] The defendants represent that Knight sent an e-mail indicating "that under the litigation rules in the United States District Court, a named defendant ordinarily has twenty (20) days from the date of service to answer or respond to a Summons and Complaint." (Duchi Affs. ¶ 5.)

390 days for discovery. [See Docs. 8, 24, 33, 47.] In all that time, the original defendant Orian Rugs has never taken or conducted any discovery whatsoever, while, simultaneously failing to make a proper response to the plaintiff's discovery, timely served. As a result, the plaintiff has been forced to file (1) a motion to compel [Doc. 39]; (2) a motion for sanctions for the defendant Orian Rugs' failure to comply with this Court's Order and to make complete discovery responses as required by the same [Doc. 52]; and (3) a response in opposition to the defendant Orian Rugs' motion to reopen the discovery period [Doc. 51].

These discovery difficulties have been consistently blamed on defense counsel's strategic desire to "conduct its discovery initiatives once questions about whether the two additional defendants, McThree Industries and Bajong Carpets, would be allowed to go forward with their defenses in this matter." [Doc. 50, Mot. Reopen Disc. at 1-2; see also Doc. 43, Resp. Mot. Compel at 3.] Accordingly, but for the default and unreasonable delay in the defendants' efforts to set it aside, Orian Rugs would have been both responsive to the plaintiff's discovery requests and would have taken its own discovery, eliminating any need for the present disagreement over reopening the discovery period and prior motions to compel and for sanctions.

As intimated in the Court's April 17, 2007 Order concerning the plaintiff's motion to compel [Doc. 47], counsel's decision not to participate in discovery or to respond to discovery until a determination as to the McThree and Bajong defendants is uncompelling.[3] Orian Rugs obligations in discovery are independent of the default issue. In the least, if counsel was convinced of this strategic need, it was incumbent upon the defendant Orian Rugs to seek protection from the Court in that regard. Instead, the defendant did nothing at all and pushed the onus upon the plaintiff to enforce her rights as against the defendants and further to bear the risk, at this stage, that discovery might be again extended

---

[3] Counsel has admitted that such a decision was "flawed." [Doc. 50 at 2.]

notwithstanding her every effort to consent to reasonable extensions of time, previously, and otherwise to do her part during the discovery period, so far allowed.

This District has also found that granting relief from default, under the circumstances, would injure the plaintiff's ability "to have confidence in her service of process." *Lewitzke*, 2006 WL 2345986, at *4; *see also Colleton Prep.*, 223 F.R.D. at 407 (finding the plaintiff's position prejudiced by granting relief to defendant because the "plaintiff could never have confidence in its service of process and hence in the timing of its legal actions").

The plaintiff has been prejudiced.

**IV. Meritorious Defense**

The defendants have proffered evidence that it may have a meritorious defense to the instant action. "[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Moradi*, 673 F.2d at 727 (citing *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 252 n.8 (4th Cir.1974)).

The defendants have submitted at least some evidence in the form of the affidavit of Stefaan Duchi which states that the defendants were not the plaintiff's employers, nor did they influence the decision to hire or terminate the plaintiff. (Duchi Affs. ¶ 8.) The plaintiff's evidence to the contrary is irrelevant. *See Moradi*, 673 F.2d at 727.

Although the defendants' affidavits seek to impermissibly speak to the ultimate legal issues – namely, who was the plaintiff's employer – portions do represent admissible testimony that the defendants had no participation in the decisions to hire or fire the plaintiff. If believed by a jury over evidence of the plaintiff, the evidence could lead to a successful defense.

**V. History of Dilatory Conduct**

There are no other instances of dilatory action alleged against the defendants, but defendants have made a serious oversight, compounded by a gross delay, which has posed

”a significant hindrance to an already burdened judicial process.” *Colleton Prep.*, 223 F.R.D. at 407. As discussed, the defendants disregard for the resources of this Court and the claims of the plaintiff are discouraging.

**VI. Other Sanctions**

Less drastic sanctions would seem ineffective because they “would do little to deter defendant from further similar actions,” *id.*, and could only be realistically imposed upon the defendant Orion Rugs (to wit, limitations, sanctions for discovery) as opposed to these defendants.

Ultimately, the Court refuses to set aside the entry of default because the record is clear that the party defendants bear, alone, the responsibility for both the initial default and subsequent and unreasonable delay and have offered no good cause for it. The Court is not unsympathetic to the realities of corporate decision-making and that mistakes can occur, even significant ones. This mistake, however, was easily avoidable. Worse, even once the mistake was realized, the defendants exhibited no urgency in their efforts to cure it. There is no argument or evidence that the default and delay can be rightly attributed to any other cause than the defendants’ own purposeful belligerence or blatant disregard. Either way, it is inexcusable.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendants’ motions to set aside the entry of default [Docs. 34 & 35] be DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

May 17, 2007
Greenville, South Carolina